UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

TYLER RAY BROWN,

    Plaintiff,

v.                             CAUSE NO.: 1:18-CV-26-HAB-SLC

DARREN KIMBRELL, DAVID HOWE,
and ALLEN PAVEL,

    Defendants.

## OPINION AND ORDER

Tyler Ray Brown is a prisoner who filed this case without a lawyer. After screening the case as required by 28 U.S.C. § 1915A, he was granted leave to proceed on two claims:

> against Darren Kimbrell in his individual capacity for compensatory and punitive damages for promoting an environment of racial hatred which resulted in his fighting with another inmate on December 8, 2017, either to punish Brown or for a reason not rationally related to a legitimate nonpunitive governmental purpose in violation of the Fourteenth Amendment [and]
>
> against David Howe and Allen Pavel in their individual capacities for compensatory and punitive damages for using force against him on December 9, 2017, either to punish Brown or for a reason not rationally related to a legitimate nonpunitive governmental purpose or excessively in relation to a legitimate purpose in violation of the Fourteenth Amendment . . ..

ECF 4 at 3.

On August 21, 2019, the defendants filed a summary judgment motion. ECF 52. With the motion, Brown was provided the notice required by N.D. Ind. L.R. 56-l(f). ECF 55. The notice informed him:

> A summary-judgment motion has been filed against you. Attached is a copy of the motion. It asks the court to decide all or part of your case without a trial. It says that there should not be a full trial because you cannot win some or all of your claims. It asks the court to enter judgment against you. The party that filed the motion will win if the facts show that party is entitled to judgment. If you do not agree with the facts in the motion, you must submit affidavits or other evidence to dispute those facts.
> Copies of Rule 56 and Local Rule 56-1 are also attached. You should carefully read - and follow - all the rules. The outcome of this case may depend on it. Following the rules does not guarantee that the summary-judgment motion will be denied. But if you do not follow the rules, you may lose this case.
> Before the court rules on the motion, you have the right to file a response. If you do not respond to the summary-judgment motion, you may lose this case. If you need more time to respond, you must file a motion asking for more time before the deadline expires. The court may - but is not required to - give you more time.

*Id*. at 1. Attached to the notice was a copy of Local Rule 56-1 which informed him he had 28 days to file a response brief and any materials necessary to raise a genuine dispute. He also had three additional days because the motion was served by mail. *See* Federal Rule of Civil Procedure 6(d). September 23, 2019, was the deadline for filing a timely response. To date, Brown has neither filed a response to the motion nor a request for additional time to do so. Therefore, the court will review the summary judgment motion without a response from him.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal

2

Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). Summary judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

## I. Claim against Darren Kimbrell

Defendant Darren Kimbrell was a guard at the Steuben County Jail where Brown was detained as a pre-trial detainee. Officer Kimbrell argues he did not promote an environment of racial hatred which resulted in Brown fighting with another inmate on December 8, 2017. In his deposition, Brown explained there was only one racially charged or motivated comment during the week prior to the fight on December 8, 2019. ECF 53-3 at 7, Brown deposition at 23:1-7. Brown makes no mention of any other racially charged or motivated incidents involving Officer Kimbrell. Brown explained that "a week prior to the fight, inmate Skylar Wilbur referred to me [in front of] officer [Kimbrell] as a nigger. And I asked the officer if he was just going to allow him to call me that; and the officer stated, 'Are you just going to let him call you that?' And that's what happened on that day." ECF 53-3 at 4, Brown deposition at 12:19-25. Later in the deposition, he provided a more detailed explanation of the same event.

> Q  Let's go back to the first racial name calling that you talk about in paragraph 1, which was December 2nd, 2017. You say that the

> defendant Officer Darren Kimbrell was doing the walkthrough of C block that time; right?
>
> A  Yes.
>
> Q  And that's when this Skylar Wilbur said what? What exactly did he say then?
>
> A  Darren Kimbrell was doing a walkthrough. I was playing cards. And he said something to me, but I couldn't hear what he said. He just said, "Mr. Brown," and inmate Skylar Wilbur said, "You're just going to single out the nigger like that?"
>
> Q  And where was Skylar sitting at that point?
>
> A  He was walking laps. He was basically walking right behind Officer Darren Kimbrell.
>
> Q  And what did Kimbrell say?
>
> A  He asked him to repeat it like he couldn't hear what he said -- like he couldn't believe what he just said. And Wilbur stated again, "Are you just going to single out the nigger like that?"
>
> Q  What did Officer Kimbrell do then -- or say then?
>
> A  By then, he was completing his walkthrough, and he just was standing there looking at me. And I said, "Are you just going to let him call me that?" And he looked at me and says, "Are you just going to let him call you that," and he walked out.
>
> Q  Did Officer Kimbrell address Wilbur in any other fashion at that point -- say anything else to him?
>
> A  No.
>
> Q  Did you have any conversation with Wilbur directly?
>
> A  No.
>
> Q  Before then had you had any conversations with Wilbur? Arguments? Any name calling?
>
> A  No.
>
> Q  So this just came out of the blue, him saying that?
>
> A  Well, the kid is white supremacy. And I'm minority in this jail, so it's not uncommon for people to call me these racial words.
>
> Q  But did Skylar Wilbur ever call you those names before that?
>
> A  No.
>
> Q  How long had you two been housed in the same cell block?
>
> A  Couple weeks.
>
> Q  Had anyone else referred to you that way in the cell block during those few weeks leading up to December 2nd?
>
> A  Not other than him and Burton.

ECF 53-3 at 6, Brown deposition at 19:25-21:24. Burton is the inmate with whom Brown fought on December 8, 2017. The only mention of Burton using a racial slur was on

4

December 8, 2017, immediately before the fight. ECF 53-3 at 5, Brown deposition at 15:16-19.

"[S]imple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). However, comments which increase the likelihood of assault may be actionable. *Beal v. Foster*, 803 F.3d 356, 357-59 (7th Cir. 2015). Here however, there is no evidence Officer Kimbrell verbally harassed Brown. There is no evidence Officer Kimbrell used a racial slur in reference to Brown. The only evidence is that Officer Kimbrell did not correct an offender whom he heard make a racial slur about Brown. Moreover, Brown was not assaulted. It was Brown who attacked Burton. Here is how Brown described the fight:

> Q Tell me what his exact words were.
> A His words to me were, "I'm not paying you shit, nigger."
> Q Was this in the open dayroom area?
> A He was in his cell; I was in the dayroom.

ECF 53-3 at 5, Brown deposition at 15:17-21.

> Q So then did you go from the dayroom into his cell?
> A Yes, I did.

ECF 53-3 at 5, Brown deposition at 17:5-6.

> Q So what happened when you went into his cell?
> A I punched him, and we started wrestling around.
> Q Punched him in the mouth?
> A Yes.
> Q Did he go down?
> A Well, he stumbled backwards.
> Q And then you start wrestling?
> A Yeah.
> Q Did you hit him any more?

A   Kind of smacked him couple times.
        Q   Did he hit you back?
        A   No.

ECF 53-3 at 5, Brown deposition at 17:13-24.

Brown was a pretrial detainee when these events occurred. "In evaluating the constitutionality of conditions or restrictions of pretrial detention . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Here, there is no evidence Officer Kimbrell intended to punish Brown when he did not correct another offender for using a racial slur against Brown. In *Kingsley v. Hendrickson*, 576 U.S. __, __; 135 S.Ct. 2466 (2015), the United States Supreme Court explained "in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *Kingsley*, 135 S.Ct. at 2473 (quoting *Bell*). Given the facts of this case, no reasonable juror could find Officer Kimbrell's decision to complete his walkthrough and exit the cellblock without correcting the inmate who made a racial slur was not rationally related to his job. Neither could a reasonable juror find Officer Kimbrell's actions were excessive. Therefore, summary judgment will be granted on the claim against Officer Darren Kimbrell.

## II. Claims Against David Howe and Allen Pavel

Defendants David Howe and Allen Pavel were guards at the Steuben County Jail where Brown was detained as a pre-trial detainee. They argue they did not use excessive force against Brown on December 9, 2017. In his deposition, Brown describes

6

what happened. Construing the evidence in the light most favorable to Brown based on his own deposition testimony, it is clear neither Officer Howe or Pavel intended to punish Brown or that they used excessive force against him. Moreover, video of the incident further demonstrates their actions were necessary to restrain Brown while he forcefully and persistently fought to prevent them from handcuffing him. Based on this evidence, no reasonable juror could find their actions were not rationally related to maintaining order and security in the jail. Neither could they find their actions were excessive.

Brown explains he was placed in a cell on "23-hour on lockdown" after his fight with Burton. ECF 53-3 at 7, Brown deposition at 23:12. "When [Officer Howe] come to get the tray, I refused to give it to him because I was having chest pains. I got asthma real bad. He wasn't taking me seriously, so I attempted to step out of the cell and go press the emergency talk button to get the sergeant and [Officer Howe] put his hand up to stop me." ECF 53-3 at 8, Brown deposition at 26:1-6. "I refused to give him my tray, so he had to open the door to get it. I wouldn't put it through the hatch, so he went out and opened my cell door to come in and get my tray." ECF 53-3 at 8, Brown deposition at 29:18-21. When Officer Howe put his hand up, "his hand [was] touching my chest to stop me from walking out." ECF 53-3 at 9, Brown deposition at 30:3-4.

Brown's refusal to return his food tray created a disruption at the jail. Rather than focusing on his request for an asthma inhaler, Brown created a conflict with the food tray and attempted to exit his cell. It is questionable whether Brown had a serious need for an asthma inhaler because he spent the next four minutes wrestling with two

7

guards while they struggled to handcuff him. ECF 54 (video timestamp approximately 12:21 pm to 12:25 pm). Shortly thereafter, "They checked my vitals and oxygen level and stuff. Took my blood pressure." ECF 53-3 at 12, Brown deposition at 43:14-15. Nevertheless, he was not given an asthma inhaler and Brown makes no mention of an immediate need for one. Nevertheless, even if he needed an asthma inhaler, fighting with the guards was not an appropriate way to get one.

After Officer Howe stopped Brown from leaving his cell by holding up his hand and touching his chest, he said, "Mr. Brown, get on the ground." ECF 53-3 at 9, Brown deposition at 30:6. Brown got on the ground, but rather than doing so in his cell, he "was right outside of my cell because I took one step out . . . [a]ll the way outside." ECF 53-3 at 9, Brown deposition at 30:10-13. This escalated the conflict. Brown was on 23-hour lockdown. He was to stay in his cell. He was refusing to do so. So Officer Pavel grabbed Brown by his ankles and pulled him one body length across the concrete floor and back into his cell. Doing so was rationally related to the legitimate need to return Brown to his cell. It was not excessive.

Once back in his cell, Brown immediately tried to get up. "I went to get up, and [Officer Pavel] stepped on my shoulder and pushed me back down." ECF 53-3 at 9, Brown deposition at 33:4-5. "[T]hen I got up on my hands and knees and I started crawling out of the cell." ECF 53-3 at 9, Brown deposition at 33:18-20.

> Q  What did Officer Pavel and Officer Howe do at that point?
> A  Pavel then tried to secure me by getting on my-- because I was on all
>       fours, he was on my back, and Officer Howe was grabbing my
>       arms to try and cuff me up.
> Q  Were you still inside your cell?

A  No. By then I crawled all the way out of my cell
Q  Did either of them say anything? Give you any orders, directives?
A  Yes. They started ordering me to cuff up.
Q  And you knew what that meant? Put your hands behind your back?
A  Yeah, or put them together period.
Q  Did they say anything about you - stop resisting
A  Yes.
Q  So they were yelling at you to stop resisting?
A  Yes.
Q  What did you say?
A  I told them that I wasn't resisting; I was just trying to get medical treatment.
Q  But you were physically resisting their efforts to handcuff you?
A  Yes.
Q  Because -- and how were you doing that? You said you were crawling, but what else were you doing?
A  I was just keeping my arms apart. They couldn't get my arms together to put the cuffs on me.
Q  Did one have each arm?
A  One had each arm, and they were striking me in my neck area and kneeing me in my ribs to get me - they say it's – they're allowed to do that to try and get me to break down I guess. I don't know.
Q  Is that when they were telling you to stop resisting?
A  Yeah.
Q  And you were still physically fighting them; right? Or keeping them from handcuffing --
A  Keeping my hands -- yeah.
Q  While they were yelling at you to stop resisting and cuff up, you were keeping your arms apart and resisting their efforts to cuff you?
A  Yes.
Q  You knew that's what they wanted to do, but you didn't want that to happen?
A  No, I did not.
Q  You were physically able to keep that from happening for a period of time?
A  Yes.
Q  While they were pulling on your arms, then somebody hit you in the neck?
A  Yes.
Q  Do you know which officer --
A  It was Officer Howe.
Q  Did he hit you with his fist?
A  Yes,

> Q Do you know if it was open or closed hand?
> A It was closed hand.
> Q Do you know how many times?
> A He probably struck me three times throughout the time that we was wrestling.
> Q You also mentioned that you were kneed in the ribs?
> A Yeah.
> Q Who did that?
> A Howe.
> Q Which side?
> A He was on my right side.
> Q So then your right ribs?
> A Yes.
> Q How many times did he knee you?
> A Repeatedly.
> Q Was that during the same time they were telling you to stop resisting?
> A Yes.
> Q And you were still keeping your arms apart?
> A Yes.
> Q Did eventually that force -- cause you or allow them to get you cuffed?
> A Yes.
> Q Once they got you handcuffed, was there any other punching?
> A No.
> Q Once they got you handcuffed, was there any other kneeing in the ribs?
> A No.
> Q Did they use any other physical force at that point in the cell block once they got you cuffed?
> A No.

ECF 53-3 at 9-10, Brown deposition at 33:24-37:12.

Brown pushed himself up after he had been told to get on the ground. Officer Pavel stepped on his shoulder and pushed him back down to emphasize and clarify that he needed to stay on the floor. Officer Pavel did not kick him or stomp on him. He did not strike him in the throat or groin. Using his foot on Brown's shoulder to control the situation was rationally related to his ongoing effort to maintain order and Brown's limited resistance at the time. It was not excessive. Nevertheless, Brown did not comply.

10

Instead, he further escalated the conflict by crawling out of his cell and across the floor. In response, it was not excessive or irrational for Officer Pavel to attempt to restrain him by climbing on his back. When Brown refused repeated orders to put his hands together so he could be handcuffed, both officers wrestled with him for nearly four minutes. During that time Brown fought with and kicked at them. The officers used necessary additional force in direct response to the increased force used by Brown. Their use of force was limited as demonstrated by how long it took them to handcuff Brown. They used only the force that was necessary to obtain Brown's compliance so they could restore order. They held him down. They pulled at his arms. They punched and kneed him in a controlled manner so he would stop resisting and allow them to handcuff him. *See* ECF 54 (video of struggle outside of the cell).

Where "the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape." *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) citing *Scott v. Harris*, 550 U.S. 372, 379-80 (2007). Here, Brown is not contradicting the video. His version of events is consistent with it. The video merely presents a more vivid picture of events which clearly demonstrates the officers were not excessive in their response to Brown's disruptive behavior. The video also supports Brown's testimony that the officers stopped hitting him as soon as he stopped resisting and was handcuffed. No reasonable juror could find for Brown on his claims against Officers David Howe and Allen Pavel. Therefore, summary judgment will be granted on these claims as well.

For these reasons, the court:

(1) GRANTS the summary judgment motion (ECF 52); and

(2) DIRECTS the clerk to CLOSE this case and ENTER JUDGMENT in favor of the defendants and against the plaintiff.

SO ORDERED on October 7, 2019.

                                            s/ Holly A. Brady
                                            JUDGE HOLLY A. BRADY
                                            UNITED STATES DISTRICT COURT